119 So.2d 596

Melvin SPARKS

v.

STATE.

6 Div. 723.

Court of Appeals of Alabama.

Dec. 15, 1959.

Rehearing Denied Jan. 26, 1960.

Morel Montgomery, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Melvin Sparks had been indicted for assault with intent to murder under two indictments charging separate offenses.

On 5 June 1956, he entered a plea of guilty to assault and battery to each indictment, and judgment of guilty was entered pursuant to such pleas.

In each case a fine of five dollars was imposed, together with costs, and the court as additional punishment, imposed a sentence of one hundred and eighty days at hard labor for Tuscaloosa County.

The fine and costs not being paid or confessed, Sparks was sentenced to appropriate time in each case for the payment for fine and costs. However, the record shows that Sparks paid the fine and costs in each case the day after he was sentenced.

Thereafter he appealed each case, and after affirmance of each case by this court he began serving his time on 25 July 1958.

In this State terms of imprisonment are served consecutively. State ex rel. McQueen v. Horton, 31 Ala.App. 71, 14 So.2d 557; Sec. 83, Tit. 45, Code of Alabama 1940.

For convenience we will hereinafter refer to Sparks' cases as Case A and Case B.

On 28 November 1958, after Sparks had served 157 days in Case A, he filed a written petition with the court below requesting that he be placed on probation in Case B.

This petition was supported by a letter from Sparks' then attorney in which it was stated, among other things:

"In view of the foregoing, it is my opinion that you have authority to suspend one of the six months' sentences of Mclvin Sparks at any time up to midnight, November 28 (TODAY), if you so desire under either Section 334 of Title 15 or Section 19 of Title 42 of the Alabama Code. In view of the restriction as to time, it is a physical impossibility to get a written opinion from the Attorney General in this regard by midnight tonight.

"In view of Mr. Sparks' record while in prison, and his prospective

job with Mr. John Anders of Northport upon his release, I wish to strongly urge your favorable consideration of his application for suspension of the six months' sentence upon which the execution is scheduled to begin immediately after midnight tonight."

Pursuant to Sparks' petition for probation the court did, on November 1958, suspend the sentence in Case B and place Sparks on probation for a period of two years, and he was released from custody.

Thereafter on 2 March 1959, Sparks was caught helping to operate a large still in Pickens County, and was arrested by federal officers.

On 4 March 1959, W. N. Baker, Parole and Probation Supervisor, swore out a warrant for the arrest of Sparks as a probation violator. He was arrested pursuant to this warrant, and a hearing was set for 30 April 1959.

Prior to the hearing, Sparks filed a motion to vacate the order of 28 November 1958, granting him probation, on the ground that said order was void when issued.

Upon the hearing on the question of revocation of probation, it was Sparks' contention that on 28 November 1958, despite his allegations in the petition signed by him, and the statements contained in his then attorney's letter, he actually had served his sentence in Case A, since with time off for good behavior, he had completed his first sentence in 150 days; that on 28 November 1958, he had served 157 days, and was therefore 7 days into his second sentence, and was in custody of the prison authorities, and therefore the court was without jurisdiction to grant him probation on 28 November 1958. It was further contended in Sparks' behalf, that he, having been released from custody under a void order, his second sentence continued to run, and had been fully served at the time of the revocation, and he was therefore entitled to his liberty.

At the conclusion of the hearing on 28 November 1959, the court adjudged that Sparks had violated the terms of his probation and ordered that such probation be revoked and the sentence in Case B be carried out. The court also overruled Sparks' motion to vacate the order of probation. "All of which is hereby ordered and adjudged on this May 5, 1959."

From the above order, Sparks has attempted to perfect an appeal to this court.

Our first concern is whether an appeal will lie from an order revoking probation.

■ The original grant of probation is a matter of grace entirely within the discretion of the trail court. See "Legal Aspects of Probation Revocation," 59 Col. L.R. p. 312. Certainly this discretionary aspect in the original granting or denial of probation is clear from our statutes pertaining to probation. Sec. 19, Tit. 42, Code of Alabama 1940, providing that circuit courts, and other courts of record from whose judgments appeals lie directly to the Court of Appeals, or Supreme Court, *may,* suspend execution of sentence and place on probation, etc., (italics ours).

■■ Under Ex parte Smith, 252 Ala. 415, 41 So.2d 570, a circuit court has jurisdiction to suspend sentence and place a convict on probation at any time before the execution of the sentence is actually begun, and the thirty day statute (Sec. 119, Tit. 13, Code of Alabama 1940) has no application to petition for probation, which, if timely filed must be entertained.

We are not now, however, considering the power of a trial court to grant or deny probation, but we are considering whether, after probation has been granted, an appeal will lie from an order revoking probation.

In this connection Sec. 24, Tit. 42, Code of Alabama 1940, as amended, provides:

"At any time during the period of probation or suspension of execution of sentence, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of

sentence. Any probation officer, police officer or other officer with power of arrest upon the request of the probation officer, may arrest a probationer without a warrant. In case of an arrest without a warrant the arresting officer shall have a written statement by said probation officer setting forth that the probationer has, in his judgment, violated the conditions of probation and said statement shall be sufficient warrant for the detention of said probationer in the county jail, or other appropriate place of detention, until such probationer shall be brought before the court. Such probation officer shall forthwith report such arrest and detention to the court and submit in writing a report showing in what manner the probationer has violated probation. Thereupon the court, after a hearing, may revoke the probation or suspension of execution of sentence and shall proceed to deal with the case as if there had been no probation or suspension of execution of sentence."

We have previously held in McCain v. Sheppard, 33 Ala.App. 431, 34 So.2d 225, in an appeal in a habeas corpus proceeding that a hearing by the court is mandatory and jurisdictional prior to the revocation of probation.

Examination of Sec. 24, supra, shows that before a probation may be revoked there must be (1) an arrest of the probationer, either on a warrant of arrest issued by the court, or a written statement by a probation officer; (2) a report of such arrest to the court, and (3) a hearing, after which the court may revoke the probation or suspension of sentence.

Thus the order and judgment revoking, or not revoking probation comes only after arrest, and hearing. It is made in a proceeding separate in time and issues from the original prosecution.

The issue in the revocation is whether the probationer has violated the terms of his probation.

Having been placed on probation, the convict is given and endowed with a new status. His sentence is suspended and he enjoys a conditional liberty. He is relieved of the ignominy of imprisonment, and may continue to support himself and his family. Clearly substantial interests accompany a probationer's status. While the probationer's interest in the maintenance of his status as a probationer may be the paramount interest involved so far as the probationer is concerned, there is also a substantial social interest involved that those who have been given an opportunity to rehabilitate themselves outside prison walls may do so, with the accompanying saving to the State, not only in maintaining the prisoner, but also the economic problems of his family.

A final judgment, decision or order which will support an appeal, is one which puts an end to the proceedings between the parties to a cause in that court, and leaves nothing further to be done. Fore v. Fore, 44 Ala. 478; Ex parte Gilmer, 64 Ala. 234. It is the view of the writer that an order and judgment revoking probation, after due notice and hearing, is a final order and judgment. It represents a conclusion of the law upon established facts, settles all issues involved, and means the end of judicial labor in the proceedings. This being so, an appeal will lie therefrom. Sec. 754, Tit. 7, Code of Alabama 1940.

While some courts have refused to allow appeals from judgments and orders revoking probation, their views are often influenced by statutes, or are conclusionary only and we think the sounder conclusions are with those jurisdictions allowing appeals from such orders.

In United States ex rel. Grossberg v. Mulligan, 2 Cir., 48 F.2d 93, 94, Mack, J., wrote:

"The act itself has no express restrictions on the power to revoke the probation or to modify the terms, conditions, or time thereof. * * * The remedy for an abuse of such discretion

or for other irregularities or errors in the exercise of jurisdiction is solely by appeal, not by habeas corpus."

Again, in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 819, 79 L.Ed. 1566, we find Justice Cardozo writing:

"We find in this statute more than directory words of caution, leaving power unaffected. This is so if we consider the words alone, putting aside for the moment the ends and aims to be achieved. The defendant 'shall' be dealt with in a stated way; it is the language of command, a test significant, though not controlling. Richbourg Motor Co. v. United States, 281 U.S. 528, 534, 50 S.Ct. 385, 74 L.Ed. 1016, 73 A.L.R. 1081. Doubt, however, is dispelled when we pass from the words alone to a view of ends and aims. Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. Burns v. United States, supra, 287 U.S. 216, at pages 222, 223, 53 S.Ct. 154, 77 L.Ed. 266. It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper. Burns v. United States, supra. That much is necessary, or so the Congress must have thought, to protect the individual against malice or oppression. Almost equally it is necessary, if we read aright the thought of Congress, for the good of the probation system with all its hopes of social betterment.

"If these are the ends to be promoted by bringing the probationer into the presence of his judge, the act is seen at once to be mandatory in meaning as well as mandatory in form. Statutes are not directory when to put them in that category would result in serious impairment of the public or the private interests that they were intended to protect. French v. Edwards, supra [13 Wall. 506, 20 L.Ed. 702]; Lyon v. Alley, 130 U.S. 177, 185, 9 S.Ct. 480, 32 L.Ed. 899; Erhardt v. Schroeder, 155 U.S. 124, 128, 130, 15 S.Ct. 45, 39 L.Ed. 94. Such is the situation here. When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal. When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to habeas corpus to put an end to the restraint."

If the word "Legislature" be used in place of the word "Congress" what was written above by Justice Cardozo is strikingly applicable to the point now considered by us.

While we are of the conclusion that the order revoking probation is one from which an appeal will lie, we note that no assignments of error have been made by the appellant.

Section 389, Tit. 15, Code of Alabama 1940 provides that in cases taken to the Supreme Court or Court of Appeals under the provisions of Chapter 18 of said code, no assignments of error are necessary. Chapter 18, supra, pertains to appeals from judgments of conviction in criminal cases. See Sec. 367, Tit. 15, Code of Alabama 1940, and appeals from judgments in habeas corpus cases. See Sec. 369, Tit. 15, Code of Alabama 1940.

■ This appeal is therefore not within the purview of Sec. 389, supra, dispensing with the necessity of assignments of error in appeals from judgments of convictions in criminal cases, but on the other hand, an assignment of error on the record is

essential to present questions for review. As stated in Smitherman v. State, 16 Ala. App. 423, 78 So. 417, which was an appeal from an order retaxing costs after Smitherman's conviction for a crime:

"We cannot consider the questions sought· to be presented by these appeals without disregarding the uniform holding in this state that, except upon an appeal from a judgment of conviction in a criminal case, an assignment of error on the record is essential to present questions for review. Williams v. State, 117 Ala. 199, 23 So. 42; Perry v. State, 1 Ala.App. 253, 55 So. 1035; State v. Dodd, 9 Ala.App. 65, 64 So. 169; Stadt v. City of Birmingham, 14 Ala.App. 667, 70 So. 973; Dreyfus v. City of Montgomery, 4 Ala. App. 270, 58 So. 730; Williams v. State, 130 Ala. 107, 30 So. 484; Pugh v. Hardman, 151 Ala. 248, 44 So. 389; Hunter v. Louisville & N. R., 150 Ala. 594, 43 So. 802, 9 L.R.A.,N.S., 848."

Affirmed.