Jesus Monje SANCHEZ, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4978.

Supreme Court of Wyoming.

March 28, 1979.

James P. Castberg, Powell, signed the
brief for appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Sharon A. Fitzgerald, Legal Intern, signed the brief on behalf of appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

RAPER, Chief Justice.

The appellant-defendant Jesus Monje Sanchez pleaded guilty in the district court to a third-degree sexual assault, § 6–4–304, W.S.1977, and was sentenced to a term of not less than one year and eight months nor more than four years in the Wyoming State Penitentiary. This appeal challenges the sentence on the ground that the district court erred in stating it could not consider probation.

We will vacate the judgment and sentence and remand the case for further proceedings.

■■■ We premise this decision on the ground that the record, as it stands, simply will not support a plea of guilty to any crime. This issue is not raised in the appeal. However, Rule 15, W.R.Cr.P.,[1] requires that judgment on a plea of guilty shall not be entered unless the court is satisfied that there is a factual basis for the plea. Strict adherence to that rule is required. *Britain v. State*, Wyo.1972, 497 P.2d 543, 545. This court will not usually consider an issue which is not assigned as error. However, we retain the right, indeed we are duty bound to consider an unassigned error under the plain error doctrine as well as our general supervisory powers, where the error is blatant and results in an unmistakable and unconscionable miscarriage of justice. Rule 49(b), W.R. Cr.P.; 3 Wright, Federal Practice and Procedure, § 856, p. 373 (discussing Rule 52(b), F.R.Cr.P., same as Rule 49(b), W.R.Cr.P.); 24 C.J.S. Criminal Law § 1678(5). The defendant was initially charged with sexual assault in the first degree in violation of § 6–4–302, W.S.1977.[2] The charge was later reduced to sexual assault in the second degree, § 6–4–303, W.S.1977.[3] A motion for

---

* At the time this case was submitted on briefs, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. This case was disposed of in the district court before the effective date (September 1, 1978) of revised Rule 15.

2. § 6–4–302. Sexual assault in the first degree.

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; or

"(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats; or

"(iii) The victim is physically helpless, and the actor knows or should reasonably know the victim is physically helpless and the victim has not consented; [or]

"(iv) The actor knows or should reasonably know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct."

3. § 6–4–303. Sexual assault in the second degree.

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituted sexual assault in the first degree:

"(i) The actor causes submission of the victim by threatening to retaliate in the future against the victim or the victim's spouse, parents, brothers, sisters or children, and the victim reasonably believes the actor will execute this threat. 'To retaliate' includes threats of kidnapping, death, serious bodily injury or extreme physical pain;

"(ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution;

"(iii) The actor administers, or has knowledge of someone else administering to the victim, without the prior knowledge or consent of the victim any substance which substantially impairs the victim's power to appraise or control his conduct;

a bill of particulars was filed by the defense counsel but the record discloses no disposition of this motion nor any response from the prosecuting attorney. A motion for discovery and inspection was also made, but again the record reflects no disposition or response. The record contains an order of the district judge signed and filed November 22, 1977, which directed the prosecuting attorney to "fully investigate and report to the Court in writing the criminal record and social history of the Defendant." No response to this order appears in the record. The defendant was arraigned on November 21, 1977. It was necessary for the court to utilize an interpreter, Mr. Carrizales, in this and in subsequent proceedings because the defendant and his codefendant, Collazo, did not speak or understand the English language to any great extent. The defendant was informed of all his constitutional rights and the charges against him, and both defendant and his codefendant indicated throughout the proceedings that they understood their rights and the charges against them. The defendant and his codefendant pleaded guilty to the second-degree sexual assault charge. The court continued to question defendant and his codefendant in order to ascertain their complete understanding.

"THE COURT:

　　*　　*　　*　　*　　*　　*

"The Court will then accept the pleas pending your placing them upon the stand, Mr. Castberg.

"How do you intend to handle that, through Mr. Carrizales?

"MR. CASTBERG: Yes, Your Honor. You wish to do that today?

　　"(iv) The actor knows or should reasonably know that the victim submits erroneously believing the actor to be the victim's spouse;
　　"(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim;
　　"(vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit; or
　　"(vii) The actor inflicts sexual penetration or sexual intrusion in treatment or examination of a victim for purposes substantially inconsistent with reasonable medical prac-

"THE COURT: I think so, Mr. Castberg. We have had some problems with not doing that in the past. Would you ask them to raise their right hand.

"MR. CASTBERG: Necessary to put both on the stand or just one?

"THE COURT: Heavens yes. They are both charged with the crime. I have got to be satisfied they both did it."

The defense counsel then asked defendant a series of questions. It was established that he and the codefendant were together on the day in question.

"Q. Did you pick up Margaret Bright in the car?

"A. Yes.

"Q. Did you take her in the car against her will?

"A. Yes.

"Q. Did you have sexual relations with Margaret Bright on that day against her will?

"MR. CARRIZALES: He thinks so because they had her in the car.

"THE COURT: He thinks so? Be more specific."

After the defense counsel elicited from defendant that Margaret Bright had said "no" on one occasion, the trial judge pursued the questioning:

"BY THE COURT: Q. Did you force her to have sexual relations?

"MR. CARRIZALES [translator]: He doesn't feel that he forced her.

"BY THE COURT: Q. Did you threaten her if she did not have relations?

tices or in a manner substantially inconsistent with reasonable medical practices.
　　"(b) A person is guilty of sexual assault in the second degree who subjects another person to sexual contact and who causes serious bodily injury to the victim under any of the circumstances listed in W.S. 6-63.2(a)(i) through (iv) [§ 6-4-302(a)(i) to (iv)] or W.S. 6-63.3(a)(i) through (vii) [subsection (a)(i) to (vii) of this section].
　　"(c) A person is guilty of sexual assault in the second degree who subjects a person under twelve (12) years of age to sexual contact and causes serious bodily injury to the victim."

"A. No.

"Q. That is, to hurt her, harm her?

"A. No.

"Q. Did she willingly have relations with you?

"A. Yes. She let herself.

"Q. Did she take off her clothes or did you?

"A. She already had the clothes off.

"Q. Who took off her clothes?

"MR. CARRIZALES: He doesn't know because he was driving."

Further testimony, under questioning by the defense counsel, produced answers that somewhat contradicted the above. Then:

"BY THE COURT: Q. Do you realize the jury might find you not guilty based on your story?

"A. Yes. (By the defendant.)

&ast; &ast; &ast; &ast; &ast; &ast;

"BY THE COURT: Q. Would you like to withdraw his plea and have a trial by jury?

"MR. CARRIZALES: I would have to suggest that the counsel and him—

THE COURT: That's up to him. It's not up to me, Mr. Castberg or anybody else.[4]

"His answer is what?

"MR. CARRIZALES: Yes, that he understands.

"THE COURT: He does want to withdraw his plea?

"MR. CARRIZALES: He does not."

The transcript of this proceeding indicates that a statement was taken from the defendant. The defense counsel became aware of this in a somewhat unusual manner.

"MR. CASTBERG: &ast; &ast; &ast; I have a statement the County Attorney just gave me taken through an interpreter and witnessed by C. J. Hunter and a witness. Would you ask Mr. Sanchez if he recognizes this statement."

The defense attorney then questioned the defendant about the statement. The prose-

cuting attorney also asked a few questions about the statement. The defendant did not indicate he wished to change his story in light of the statement. The statement itself is not in the record nor do we have any information about the circumstances in which it was taken. No inquiry was made in this regard. A similar situation arose over a statement of the codefendant. That statement does not appear in the record either, nor was inquiry made as to its origin.

When the codefendant testified, the story became more confused. The defendant and the codefendant met the victim in a bar and she played pool with them. She left the bar with them but got mad and went back to the bar. The codefendant was drunk but said he understood what he was doing.

"BY MR. CASTBERG: Q. Did you force Margaret into the car?

"MR. CARRIZALES: He didn't car. [sic] He didn't force her that way.

"BY MR. CASTBERG: Did you put your arms around her?

"A. Yes.

"Q. Did you pull her into the car?

"MR. CARRIZALES: He got in first, then she did.

"BY MR. CASTBERG: Q. Did you pull her in behind you?

"A. No. Just came."

The codefendant then somewhat contradicted this testimony. He said he had hold of her hand and that she said "no" more than once. Then:

"Q. [defense counsel] Did you take off her clothes?

"MR. CARRIZALES: He took off her shoes.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Did she ever consent to have intercourse with you?

"A. Yes.

"Q. She agreed to have intercourse with you?

"A. Yes.

---

**4.** At this point the trial judge should have insisted upon and fully satisfied himself that the

defendants were fully counseled by their attorney.

"Q. How did she agree?

"MR. CARIZALES [sic]: It started out in the bar and she had already accepted to go out with him and she got in the car with him on her own will.

\* \* \* \* \* \*

"Q. This was after. Then you saw her on the street; is that right?

"A. Yes.

"Q. That's when you grabbed her by the wrist and pulled her into the car?

"A. Yes.

\* \* \* \* \* \*

"Q. And she said, no, she didn't want to do that?

"A. That's the only thing she said.

"THE COURT: Was no?

"MR. CARRIZALES: No.

"BY MR. CASTBERG: Q. Did she ever say, yes, she wanted to have intercourse with you?

"MR. CARRIZALES: He said he asked her if she wanted to have intercourse with him or sexual relations and she said she didn't care."

Some confused testimony followed about the undressing of the victim and who was driving the car.

"THE COURT: Something isn't adding up here. Jesus testified that he was driving, doesn't know how she got her clothes—[off]." (Bracketed material supplied.)

The prosecuting attorney offered to explain this away, but the judge said he didn't understand it to be that way. The codefendant than stated that Jesus was driving. When asked again if the victim consented to intercourse, he responded that she had said that she didn't care.

"THE COURT: I can't accept that.

\* \* \* \* \* \*

"THE COURT: If he took her shoes off, who took the rest of her clothes off?

"MR. CARRIZALES: As far as he knows she took it off."

More confusing testimony follows. No other evidence was presented that serves to establish the factual basis for the crime in question. The trial judge then accepted the codefendant's guilty plea. He had earlier accepted defendant's guilty plea.

Defendant was sentenced on April 5, 1978. At that time the trial judge made the following statement to defendant and his codefendant:

"Now we are getting to the important part.

"The Court, after the defendants entered their pleas, has reviewed the transcript, the presentence investigation reports and the statute, and has come to the opinion that the factual basis set out at the time of the pleas will sustain neither a plea of guilty to first degree or second degree rape.

"Therefore, the defendants have the right at this time to withdraw their pleas if they so desire and they may either go to trial or plead guilty to a lesser offense, and if at the time of trial they are charged with first degree rape, and the Court at the end of the case is of the same opinion on first and second as it is today, the Court will instruct only on third degree sexual assault,[5] which carries with it a sentence of not less than one nor more than five years in the State Penitentiary.

"The defendants have this option open to them plus the fact that the jury might find them not guilty of all sexual offenses.

Would you ask the defendants, Mrs. Trevino, if they wish to have a trial before 12 jurymen who will decide the facts. Before they answer, remembering my previous explanation of the jury trial to them, where it takes 12 people to say that they are guilty and that if even one person says, no, then we have what we call a

---

5. § 6–4–304. Sexual assault in the third degree.

"Any actor who subjects a victim to sexual contact under the circumstances of W.S. 6–63.2(a)(i) through (iv) [§ 6–4–302(a)(i) to (iv)] or W.S. 6–63.3(a)(i) through (vii) [§ 6–4–303(a)(i) to (vii)] under circumstances not constituting sexual assault in either the first or second degree commits sexual assault in the third degree."

hung jury, and the County Attorney after going through the record may think he should try them a second time. If so, this will be before 12 new and entirely different people. On the other hand, the County Attorney may decide that if he couldn't sell it to the first jury, then why go to the time and expense and bother of trying it a second time, and in that event it will be dismissed and that will be the end of it.

"Would you at this time then—You don't have to translate this. Would you at this time, Mr. Castberg, ask them their preference or any additional questions you may wish to ask.

"One further thing, that if they elect to go to trial, they will be tried not later than the month of June and possibly sooner.

"Anything else you want her to ask them, Mr. Castberg?

"Also ask them if they understand what I have said to them so far.

"Probably ought to go one step further. Assuming that Mr. Darrah might be willing today to reduce the charges to third degree sexual assault. I don't know whether he will or not.

"MR. CASTBERG: Both of my clients have indicated, Your Honor, through the interpreter, that they do not desire to go to trial and would like to plead guilty to a lesser offense rather than first or second degree sexual assault.

"MR. DARRAH: Please the Court, at this time, the State, in light of the indication from the defendants they would be willing to plead to third degree sexual assault, would be disposed to dismiss second and first degree sexual assault against the defendants.

MR. CASTBERG: We have no objections, Your Honor.·

"THE COURT: The Court will allow the reduction to third degree sexual assault, and it feels in light of its examina-

tion of the statutes pertain [sic] to first and second degree, the presentence investigation reports and the transcript itself, that a factual basis was established on the 21st day of November, 1977, which would allow this Court at this time to accept those pleas without any further factual basis being established."

█ Rule 15, W.R.Cr.P., requires the trial judge to determine that there is a factual basis for the plea.[6] Here the defendant did not speak English and the trial judge had a special burden to determine that the guilty plea was voluntary. 21 Am.Jur.2d Criminal Law, § 486, n. 18, p. 478; *Conley v. State*, 1972, 259 Ind. 29, 284 N.E.2d 803, 807. There is a wealth of authority readily available to guide the disposition of a guilty plea under such circumstances. The testimony that appears in the record amounts to a denial of guilt. No attempt was made to otherwise determine the factual basis of the plea. In the absence of a showing of a factual basis for the plea, however, it would be wrong to accept a guilty plea coupled with a protestation of innocence in the absence of sufficient inquiry by the court. Wright, Federal Practice and Procedure, Vol. 1, Criminal, § 174, p. 377. Further, the court must also be satisfied that the "defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 1969, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418. In *United States v. Vera*, 5th Cir. 1975, 514 F.2d 102, 104, a case very similar to that at bar, it was determined that without further questioning of the defendant and without advising him fully what acts were necessary to establish guilt, the court could not have determined that the defendant understood his conduct, in light of the law, to be criminal. Also see, *Gregory v. State*, Alaska 1976, 550 P.2d 374, 379–381.

We also agree with the following language which was quoted in *State v. Darling*, 1973, 109 Ariz. 148, 506 P.2d 1042, 1047:

---

**6.** One way to establish the factual basis is to have the accused describe the conduct that gave rise to the charge. *Santobello v. New York*, 1971, 404 U.S. 257, 261, 92 S.Ct. 495, 498,

30 L.Ed.2d 427. Where this does not yield the desired result, as is the case here, something more obviously needs to be done.

" '* * * [W]e shall look to counsel in all criminal cases to advise their clients to the best of their ability, and as well or better than the high standard that the State Bar will seek to impose. But further than that this Court, regarding attorneys as officers of the court, will look to them to cooperate with the courts and not only see that their clients are personally well advised by them, but that the court will be assisted to see that all of a client's rights are protected on the record. An attorney will do this not only in fulfillment of his oath and duty as an attorney, but also because any petition for review that is based on the defendant seeking a plea review on the grounds he did not enter his plea understandingly is a reflection on both the court and the defendant's counsel, and incidentally insofar as proper procedure could have avoided the necessity of review, a burden on the administration of justice, and a disservice, if not an injustice, to others who have occasion to employ or operate the machinery of justice.' *People v. Jaworski*, 387 Mich. 21, 33, 194 N.W.2d 868, 873 (1972)."

The court in that case also stated:

"We would add also that there is an equal responsibility on the part of the attorney for the state to make sure that the court does not omit any legitimate avenue of inquiry which will assure that the record made at the time of the plea of guilty satisfies all the requirements of *Boykin,* supra,[7] and that resort to the extended record will not have to be made either by the trial court or by this court on appeal." *State v. Darling,* supra at 506 P.2d 1047. (Footnote added.)

We also agree with these sentiments.

From the record we can only guess the defendant understood the effect of pleading guilty. The trial judge failed to ensure that there was a factual basis for the plea. The record also discloses that both trial counsel failed to aid the court in arriving at a just determination of whether to accept the guilty plea.

As a matter of fact we are not sure from the record that the defendant was ever counseled by his attorney. There is no hint in the record that the defense attorney advised his client in the light of the evidence against him or that any determinations about that evidence were ever made by anybody.

Since this case may again reach the sentencing stage, we will also address the issue raised on appeal. After pronouncing sentence, the judge stated:

"THE COURT:

\* \* \* \* \* \*

"In passing this sentence the Court would like to state it has been impressed by the array of witnesses who have testified on behalf of these defendants. Each and every one of them are well respected in their respective communities. However, the Court could not consider a suspension of sentence or probation. * * this is a very serious crime. In fact, one of the most serious crimes in the State of Wyoming.

"National attention is being devoted and crash programs organized every day so that the streets of our state and country will be safe for women to walk upon day or night without being subjected to sexual abuse.

"The Court further is not of the opinion that it can suspend a one year mandatory sentence under the statute, and it has not imposed the maximum because of the testimony here this afternoon. And, finally, if this Court were to suspend these two gentlemen, despite their apparent excellent past records, none of this would reach the ears of the public and the public would simply see that this Court condones sexual abuse of women, and would be telling the public at large, if you want to rape or sexually abust [sic]

---

7. The primary concern in the cited case was a satisfaction of the standards established by *Boykin v. Alabama*, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. In the case at bar we are not concerned with the *Boykin* requirements since the proper warnings were given. The real question is the understanding of the defendant.

a woman, you will be placed on probation in this court. * * * "

The defense attorney then inquired of the court if it had said it cannot consider probation. The judge replied:

"THE COURT: That's correct. Not when a mandatory sentence is prescribed.

"Examine that this way, Mr. Castberg, if I were to consider suspending the one to five year sentence, then that also means that I could also suspend a one to twenty for second degree murder, and I do not think that's the intent of the legislature, and in those crimes with which the Court considers it can suspend the sentence the wording as in the mandatory, not less than or more than, that is not used, the wording used is, may be sentenced up to, not exceeding 'X' number of years in the penitentiary."

The district court stated several reasons why probation would not be granted. While the judge expressed an opinion that he was impressed with the evidence favoring probation, he concluded that he could not consider probation but rather took the evidence into account in imposing a lenient sentence.

Section 7–13–301, W.S.1977, provides that a court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence and may also place the defendant on probation, except "crimes punishable by death or life imprisonment." In *Peterson v. State*, Wyo.1978, 586 P.2d 144, we were confronted with a similar, although by no means identical, sentencing problem. There we were faced with a situation wherein the trial judge suggested that he would grant probation if it were not precluded by the above cited statute, § 7–13–301, W.S.1977. We concluded in *Peterson* that § 7–13–301 was intended to provide the benefits outlined therein to deserving defendants with the single exception of crimes punishable by death or life imprisonment. We further concluded that crimes, such as second-degree murder, which has a maximum sentence of life imprisonment, were not included in the proscription of that statute.

■ A grant of probation is addressed to the sound discretion of the trial court. § 7–13–301, W.S.1977; and see cases, West's Digest System, Criminal Law, ■ It is an act of grace and clemency. See cases, West's Digest System, Criminal Law, ■ and *Cavanagh v. State,* Wyo.1973, 505 P.2d 311. The only right which an applicant for probation possesses is that his petition should be considered by the court. *United States v. Hayward,* 7th Cir. 1972, 471 F.2d 388, 391; *State v. Cole,* Iowa 1969, 168 N.W.2d 37, 40; *Sparks v. State,* 1959, 40 Ala.App. 551, 119 So.2d 596, 598; *State v. Ellis,* 1950, 70 Idaho 417, 219 P.2d 953, 956; *People v. Blankenship,* 1936, 16 Cal.App.2d 606, 61 P.2d 352, 353. Further, a trial judge must give consideration to the application and grant or deny the same in the exercise of a sound legal discretion. The refusal of the application must not be based upon mere whim or caprice nor upon any ground not sanctioned by the law. *State v. Ellis,* supra at 219 P.2d 956.

This court has not had an opportunity to provide specific guidance to the district court on matters of probation. Our recent decision in *Peterson v. State,* supra, addressed only a narrow question raised by rather specific circumstances and questions. Nonetheless, much guidance is available to the district courts in the form of cases from other jurisdictions, the American Bar Association (A.B.A.) Standards for Criminal Justice, Probation, and Wharton's Criminal Procedure, Vol. IV, § 613 et seq., p. 230 (1976). We do not suggest that these are the only sources district courts should look to for guidance or that they should consider themselves bound thereby. We direct only that they be given proper consideration where probation is considered as an alternative to incarceration.

■ The comments of the trial judge in this case strongly suggest that the application for probation was not considered by the court because he considered the sentence set out in the statute to be mandatory. While the judge first stated he was "of the opinion" he could not grant probation, upon inquiry by the defense counsel, his comments indicate that he found he could

**1138**

not and would not consider probation. We hold this to be an abuse of discretion because we agree with the above-cited authority that the trial court is duty bound to consider and determine an application for probation.

We point out that other comments by the trial judge at the time of sentencing increase our doubt that the application for probation was given consideration. The A.B.A. Standards, Sentencing Alternatives, § 2.5(c)(iii), condone total confinement if:

"It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement. On the other hand, community hostility to the defendant is not a legitimate basis for imposing a sentence of total confinement."

In this case, the trial judge did not suggest there was community hostility to this particular defendant, but he did state that public sentiment against persons who have committed such a crime as that committed by defendant played a role in his decision not to consider probation.

The A.B.A. Standards, Probation, isolate some considerations that should be taken into account in the determination of a grant of probation:

"§ 1.3 Criteria for granting probation.

"(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:

"(i) confinement is necessary to protect the public from further criminal activity by the offender; or

"(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

"(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

"(b) Whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence."

In this case, the trial judge's comments strongly suggest his decision to not consider probation turned "upon generalizations about types of offenses," rather than the facts and circumstances of this case.

As we have said before, we do not purport to say that the standards are set out above are rigid rules and the only matters which can or should be considered. However, they do provide a skeletal framework for considering a properly presented petition for probation. Nor should any view expressed in this opinion be construed to mean that this court is directing that this defendant be granted probation.

The judgment and sentence is vacated and the case remanded to the district court for further proceedings accordingly.