291 So.2d 751

**Albert Mike PHILLIPS, III**

**v.**

**STATE.**

**1 Div. 412, 1 Div. 417.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

———◆———

J. D. Quinlivan, Jr., Mobile, for appellant.

William J. Baxley, Atty. Gen., and Donald G. Valeska, II, Asst. Atty. Gen., for the State.

HARRIS, Judge.

These two cases are so intertwined we feel they should be consolidated and disposed of at one and the same time. These two records were submitted on briefs on July 17, 1973.

On July 25, 1972, appellant was indicted by the Grand Jury of Baldwin County for possession of marihuana in violation of the Uniform Controlled Substances Act. On August 14, 1972, he appeared in open court with his attorney and pleaded guilty to the indictment and was sentenced to three (3) years imprisonment in the penitentiary. This sentence was suspended and he was placed on probation for a period of four (4) years.

One of the conditions of probation was that he was to avoid anyone using drugs and not to use drugs himself and not violate the law in any respect. The probation officer testified that appellant was arrested on September 27, 1972, on a new charge of possession of a controlled substance. He was indicted in October, 1972. Further, that in March of 1973, he was again arrested for a violation of the Uniform Controlled Substances Act. These last two violations gave rise to a request from the probation officer for a hearing to determine if appellant's probation should be revoked. Following a full hearing on this issue on April 12, 1973, the trial court revoked appellant's probation and directed that he serve the sentence imposed on August 14, 1972, of three (3) years in the penitentiary. Hence, this appeal.

The facts developed on the revocation hearing are as follows:

In March of 1973, around 9:50 P.M., State Trooper Aubrey Little was in a patrol car in the Town of Loxley, Baldwin County, Alabama. He observed appellant driving an automobile in an erratic manner on the public highway running from Loxley to Robertsdale. He stopped him,

got him out of the car and arrested him for driving while intoxicated. He observed appellant's physical condition. According to this witness, appellant's tongue was twisted and he could not talk plain, he had a very odd look in his eyes—like he was looking off in space.

The trooper radioed the Robertsdale Police Department for assistance as the car was parked in the middle of the street in an intersection in Loxley. An officer from Robertsdale arrived and drove appellant's car to the jail in Robertsdale where it was parked. The trooper carried appellant in the patrol car and they all got to the jail about the same time. The trooper ran a P.E.I. test on appellant to determine his degree of intoxication. On the trip to the jail, appellant talked incoherently and finally went to sleep. At the scene of the arrest, appellant told the trooper that he had been drinking beer all day. To the trooper's utter dismay the test was completely negative of intoxication from the consumption of alcoholic beverages or liquors. The trooper knew that appellant was on probation as a result of a drug conviction. He and one of the Robertsdale police officers went to appellant's automobile to search for drugs. At this time appellant was in jail. They did not procure a search warrant. While searching the automobile, the city policeman found two (2) cigarettes in the ashtray on the dash of the car.

By an "unbroken chain" the preliminary proof identifying the two cigarettes fully complied with the rule and the Assistant State Toxicologist was properly allowed to render an opinion that these cigarettes contained marihuana.

Appellant moved to suppress the evidence contending that the search of the automobile was not incident to a legal arrest and, therefore, violated his Fourth Amendment rights. The trial court overruled the motion to suppress.

For a better understanding of the proceedings in the court below, we quote from the record:

"JOE OLIVER, STATE PROBATION OFFICER FOR BALDWIN COUNTY, BEING FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

"Examination by Mr. Hendrix.

"Q. Mr. Oliver, you are the Probation officer for Baldwin County?

"A. Yes sir.

"Q. Employed by the State of Alabama?

"A. Yes sir.

"Q. Do you know this defendant, Albert Michael Phillips, III?

"A. Yes sir.

"Q. Did you have him on probation?

"A. Yes sir.

"Q. How long have you had him?

"A. Since August 14, 1972.

"Q. What was your advice, or what restrictions did you place on him at the time he was placed on probation?

"A. The normal restrictions that the orders of probation contain, such as not to fool around with any one using drugs or using them himself and, of course, he had to report regularly, and he wasn't supposed to leave the State without permission or violate the law in any respect.

"Q. You informed him of all of this?

"A. Yes sir.

"Q. Did he report regularly?

"A. His reporting was all right—Of course, two months after he was placed on probation, around the 27th day of September he was arrested on a new charge of possession of controlled substance.

"MR. HENDRIX: That was sale in Gulf Shores.

"WITNESS CONTINUES: And then, of course, again here recently, in March, a new arrest on a controlled substance charge.

"JAMES A. HENDIX, DISTRICT ATTORNEY, BEING FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

"MR. HENDRIX: This is merely to inform the Court that there was an indictment returned against this defendant on October—in October of '72—two months after he was placed on probation for the sale of Phenmetrazine, which is a controlled substance as set out in Section 208, Schedule 3B 2 of the Alabama Controll (sic) substance (sic) Act, and that is signed by me as District Attorney. Then at the April Session, 1973, of the Grand Jury this defendant was indicted for possession of Marijuana as a result of this case right here, and that indictment is signed by me.

"ON CROSS EXAMINATION OF THE DISTRICT ATTORNEY, HE TESTIFIED:

"Examination by Mr. Quinlivan.

"NONE.

"ON CROSS EXAMINATION OF JOE OLIVER, THE STATE PROBATION OFFICER, HE TESTIFIED AS FOLLOWS:

"Examination by Mr. Quinlivan.

"Q. Did you file a petition for revocation of this defendant's probation?

"A. Not a written request, vocal, yes.

"MR. QUINLIVAN: I renew my motion to suppress the evidence on the ground of illegal search.

"THE COURT: Deny the motion and revoke his probation and let him go ahead and serve the sentence imposed.

"MR. QUINLIVAN: On the notice of revocation, we would like to file notice of appeal, and I believe he is without funds to pay for the transcript and I would ask the Court to order a transcript—

"THE COURT: —I take the position that a man on probation, I have given him something which I didn't have to give him and I don't think he has a right to appeal from this and if he appeals and gets a free transcript it is going to be because somebody higher up orders it; he has violated his probation after being warned and he is going to serve this sentence. If some Appellate Court or Federal Court wants to order a transcript, or his attorney, it is up to them.

"MR. QUINLIVAN: We ask that you set an appeal bond.

"THE COURT: I deny that; I don't think you have a right to appeal from a revocation."

■ The trial court was in error in holding that no appeal lies from an order of revocation of probation and that a defendant, though indigent, was not entitled to a free transcript. Sparks v. State, 40 Ala.App. 551, 119 So.2d 596; Martin v. State, 46 Ala.App. 310, 241 So.2d 339; Title 15, Section 318(1) to Section 318(12) and Title 15, Section 380(14) to Section 380(25). The trial court denied bond pending appeal. If the evidence suffices to support revocation, it will also support denial of bond pending appeal from revocation. Marlow v. State, 43 Ala.App. 494, 192 So.2d 926.

■ There was no finding of indigency and we have a transcript of the evidence taken on the hearing and appellant is represented on this appeal by a lawyer of his choice, who has properly assigned errors. Sparks v. State, supra.

On hearings of this kind, case law has evolved certain rules to guide trial courts.

■ There is no criterion or measure of proof required to revoke probation. Only a gross abuse of discretion will justify disturbing the trial court's conclusions. Williams v. State, 40 Ala.App. 139, 109 So. 2d 145.

■ All that is required in a hearing of this character (which is mandatory) is

that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has violated a valid condition upon which the sentence was suspended. The court is not bound by the strict rules of evidence, nor need the hearing be formal. And, too, the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt. Absence of counsel at a probation revocation hearing is not a denial of due process. Martin v. State, supra.

■ However, there are some jurisdictional prerequisites to revocation of probation. Before a probation may be revoked, there *must* be (1) an arrest of the probationer, either on a warrant of arrest issued by the court, or a *written* statement by a probation officer; (2) a report of such arrest to the court; and (3) a hearing, after which the court may revoke the probation or suspension of sentence. Sparks v. State, supra; Martin v. State, supra.

■ It is clear from a search of the record in this case that the circuit judge did not issue an arrest warrant for violating the terms and conditions on which the sentence was suspended and probation granted. It is equally clear that the probation officer did not file a written report of such arrest or a written statement and did not "submit in *writing a report* showing in what manner the probationer has (had) violated probation." Title 42, Section 24, Code of Alabama 1940. Indeed, the probation officer candidly admitted that he did not file a written report or statement in compliance with Title 42, Section 24, supra. He said "not a written request, vocal, yes."

We, perforce, must hold that the jurisdictional requirements leading up to a hearing and a valid order of revocation of probation were not met in this case and we have no alternative but to reverse and remand this case for non-compliance with the statutory and case law of this State.

In the light of what we have said, we do not deem it necessary to treat the constitutional question involved in the search of appellant's automobile without a valid search warrant.

Reversed and remanded.

What we said in Phillips v. State, 1 Div. 412, supra, would, ordinarily, have put this case to rest. Appellant's resourceful counsel fully realizing that the law and rules governing probation revocation hearings would in all probability be resolved against his client sought to head off such an eventuality by filing a petition for writ of error coram nobis attacking the validity of the original judgment of conviction upon which sentence was suspended and probation granted. He filed this petition on the very day the revocation hearing was set. This demonstrated a marked degree of ingenuity for if the original judgment would not pass muster then all proceedings thereafter are *coram non judice* and void.

It is appellant's contention that the trial court failed to comply with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274, when the trial judge accepted appellant's plea of guilty. We must examine the colloquy between the trial judge and the defendant at the time the guilty plea was accepted to determine if there was a compliance with the *Boykin* rule.

From the record:

"REPORTER'S NOTE: At this time the Court Reporter read in open Court the notes above referred to, which were taken at the time the Defendant entered his plea of guilty, and which is as follows:

"STATE OF ALABAMA VS. ALBERT M. PHILLIPS, III. REPRESENTED BY Hon. Harry J. Wilters.

"THE COURT: Mr. Phillips, it is my understanding that you want to change your not guilty plea to guilty?

"DEFENDANT: Yes sir.

"THE COURT: I believe you have your own Lawyer?—That your people hired him?

"DEFENDANT: Yes sir, Mr. Wilters.

"THE COURT: Has he explained all of your Constitutional rights to you?

"DEFENDANT: Yes sir.

"THE COURT: How old are you?

"DEFENDANT: 17.

"THE COURT: Did he explain to you that you had a right not to plead guilty?

"DEFENDANT: Yes sir.

"THE COURT: That you had a right to a trial by jury if you wanted it?

"DEFENDANT: Yes sir.

"THE COURT: That you had a right to have witnesses confront you and be cross examined?

"DEFENDANT: Yes sir.

"THE COURT: That you had a right to subponae (sic) witnesses in your behalf?

"DEFENDANT: Yes sir.

"THE COURT: The Constitution of Alabama presumes you not guilty and it is up to the State to prove you guilty beyond a reasonable doubt?

"DEFENDANT: Yes sir.

"THE COURT: You understand if you plead guilty and are put on probation, if you violate that probation that you will be sent to serve your sentence?

"DEFENDANT: Yes sir.

"THE COURT: He had time to prepare your case?

"DEFENDANT: Yes sir.

"THE COURT: No argument agout (sic) that?

"DEFENDANT: No sir.

"Q. THE COURT: You still want to change your plea from not guilty to guilty?

"DEFENDANT: Yes sir.

"THE COURT: Are you his mother?

"MOTHER: Yes sir.

"THE COURT: And you are his grand-father?

"GRAND-FATHER: Yes sir.

"THE COURT: You both understand we are giving this boy a break? I understand that he has been running around with a wrong crowd and if he gets in trouble again, no matter how slight, he will have to serve the sentence that I give him today, and not only stay out of trouble, but do with (sic) the Probation Officers says.

"MOTHER & GRAND FATHER: Yes sir.

"THE COURT: Mr. Hendrix, what is your recommendation?

"MR. HENDRIX: Three and four.

"THE COURT: With what I have told you, you still want to plead guilty?

"A. Yes sir.

"THE COURT: It is the judgment of the Court that you are guilty. Do you have anything to say before I pass sentence?

"DEFENDANT: No sir.

"THE COURT: It is further the sentence of the Court that you be imprisoned in the Penitentiary of the State of Alabama for three years, and on the recommendation of the District Attorney and your Attorney I am going to suspend that sentence and place you on probation for a period of four years. That will be until after you have reached the age of 21, and as I have told you, I feel that one of your problems is running with the wrong crowd and during the period of probation you have to be careful and do what the probation officer tells you and a part of the probation is that you pay the Court costs in this matter and

I will give you 60 days to pay it. Make sure you see the probation officer."

In *Boykin,* supra, the United States Supreme Court said:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923. We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (Garner v. Louisiana, 368 U.S. 157, 173, 82 S.Ct. 248, 256, 7 L.Ed.2d 207; Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326), and forestalls the spin-off of collateral proceedings that seek to probe murky memories."

 A comparison of the above quoted colloquy between the trial court and the defendant with the quoted excerpt from *Boykin* shows conclusively that all of the defendant's constitutional rights in guilty plea cases were fully spelled out except the first one—"(is) the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth."

All constitutional rights must be accorded to everyone charged with violations of our criminal laws—the guilty as well as the innocent. To grant *some* but *not all* constitutional rights to an accused is just as fatal to a conviction as a *denial* of all constitutional rights. See Honeycutt v. State, 47 Ala.App. 640, 259 So.2d 846; Walcott v. State, 288 Ala. 546, 263 So.2d 178.

For failure to comply *fully* with the *Boykin* rights the case must be reversed and remanded for further proceedings not inconsistent with this opinion. Young v. State, 264 So.2d 821 (Miss.1972).

Reversed and remanded.

All the Judges concur.