Appellant was convicted for the crime of embezzlement and sentenced to eight years in the penitentiary. He was represented by court-appointed counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. New counsel was appointed to represent appellant on this appeal.
At the conclusion of the State's case there was no motion made to exclude the State's evidence. At the conclusion of the entire case appellant made the following motion: *Page 546 
 "At this time, Your Honor, we'd like to make a motion for a directed verdict to exclude the evidence for failure to make a prima facie case."
There was no request for the affirmative charge; there was no motion for a new trial; and no exceptions were reserved to the court's oral charge to the jury.
On August 13, 1979, appellant was employed as a salesman with Plainsman Chrysler, Plymouth, Dodge, Inc., a corporation, located in Auburn, Alabama. On that date, pursuant to his employment, appellant sold a 1978 Dodge Challenger to Marvin Williford, Jr., of Tuskegee, Alabama. The purchase price was seven thousand, six hundred dollars. Mr. Williford paid twelve hundred dollars as a down payment and sought additional financing through Chrysler Credit Corporation. The twelve hundred dollars was paid to appellant and he along with Mr. Williford went to the office of the sales manager, Mr. David Higgins, who wrote Williford a receipt for the twelve hundred dollars and took his application for the additional financing. Williford then returned to his home in Tuskegee.
Mr. Higgins called Chrysler Credit Corporation and advised them of the down payment and the credit application. The next morning, August 14, 1979, Chrysler Credit Corporation called Mr. Higgins and advised him it would be necessary that Mr. Williford get a co-signer on the note and pay an additional three hundred dollars. Mr. Higgins called Mr. Williford and advised him of these additional requirements. Mr. Williford was agreeable and appellant was sent to Tuskegee with the papers to be co-signed. Appellant met Mr. Williford at a pre-arranged place in Tuskegee and he asked appellant why he had to pay three hundred dollars more as a down payment. Appellant gave him no explanation.
Mr. Williford got in the car with appellant and rode to the Veterans Hospital in Tuskegee where Williford's father was employed. Williford's father agreed to sign the note and the credit application. After the paperwork was completed and they were leaving the VA Hospital appellant told Williford he could pay him the three hundred dollars and save a trip to Auburn. Williford thereupon gave appellant two one hundred dollar bills and five twenty dollar bills.
Appellant returned to Auburn and gave Mr. Higgins, Plainsman's sales manager, the completed credit application and the co-signed note but he did not turn in the three hundred dollars which was still in his possession at that time. Mr. Higgins was busy at the time and told appellant he wanted to talk to him in fifteen or twenty minutes. Later Mr. Higgins met with appellant and informed him he was no longer employed by the company. Appellant's employment was then and there terminated for unrelated reasons. Mr. Higgins got another employee, Mr. Luke McAlister to drive appellant to his home in Opelika. En route to Opelika they stopped at a place and bought a beer. Mr. McAlister who was driving appellant home saw appellant pull a wad of money out of his pocket when they got to Opelika. He saw a hundred dollar bill and some twenties and asked appellant where he got the money, and appellant replied that he always kept money around. When Mr. McAlister returned to Auburn he told Mr. Higgins about the money that appellant had in his possession.
In the meantime Mr. Higgins called Mr. Williford in Tuskegee and asked him when he wanted to come to Auburn with the balance of the three hundred dollars and pick up the car. Williford informed Mr. Higgins that he had paid the three hundred dollars to appellant after his father had signed the papers and the note. Upon learning that appellant had failed to turn in the money at the time he turned in the credit application and the co-signed note, Mr. Higgins dispatched another employee, Mr. Eugene H. Spinks, to Opelika to contact appellant and recover the money. Mr. Spinks went to appellant's home and found him and his girl friend coming out of the door.
Mr. Spinks explained to appellant that the company knew he had the three hundred dollars and if he would return it the *Page 547 
whole matter would be forgotten and that would be the end of it. Appellant refused to surrender the money saying, "Under no circumstances, I'm not giving up nothing." Appellant ordered Mr. Spinks out of his yard.
From the record:
"Q. All right. What happened then?
 "A. Then him and I got into a heated discussion; and I knew he had the three hundred dollars, and I tried to get it from him by putting my hand in his pocket, and you know, pulled it halfway out and by that time he pulled my hand out of his pocket and I let the money go. By that time his girl friend was standing by the car, they were getting ready to go, and he told me that I'd better get out of his yard, which I felt I was wrong; so, I just got in my car and he followed me to the corner and I turned around and came back because he was following me, and then he turned around and went back.
 "Q. When you stuck your hand in his pocket and grabbed ahold of the money, did you grab ahold of some money?
 "A. It was two one hundred dollar bills and some twenties."
On cross-examination he was asked how long it took appellant to get his hand around there to prevent him from taking the money and he replied, "Well, at that time he was intoxicated, so it took him a little time to get his balance to even put his hand over it."
Mr. Spinks further testified that the company had to re-do the contract and change it from a fifteen hundred down payment to twelve hundred dollars down payment and give the customer a three hundred dollar check as a refund.
Appellant testified as the only witness for the defense. He admitted that he had a prior felony conviction for forgery in the second degree and was sentenced to a term of three years in the penitentiary. He pleaded guilty and was placed on probation. The probation was subsequently revoked and he actually served sixteen months of that sentence.
He further testified that he sold a 1978 Dodge Challenger to Marvin Williford, Jr., while he was employed by Plainsman Chrysler, Plymouth, Dodge, Inc., a corporation, and before the sale was completed he permitted Williford to test drive the car. He rode with Williford during the test drive; that Williford told him he had seventeen hundred dollars to make a down payment but for some reason he could not get it financed. Appellant told Williford that he would help him all he could. Appellant talked to the sales manager, Mr. David Higgins, and was told that twelve hundred dollars down payment would be fine. Williford gave him the twelve hundred dollars and he carried the money to Mr. Higgins who wrote Williford a receipt; that Williford was so appreciative that appellant had kept the down payment so low that he gave appellant a one hundred dollar bill. Appellant told Williford that it would not look good if anybody found out about it. He said he didn't twist Williford's arm to get the hundred dollar bill; that he told Williford he had his receipt for the twelve hundred dollars and that they should know the next day about the credit application; that when he got to the office the next morning he had a call from Williford wanting to know if his car was ready. He told Williford he would call him back and he tried unsuccessfully to find David Higgins. Upon being unable to find Mr. Higgins appellant talked to the used car manager who told him that Williford would have to get his father to co-sign the note. He then was sent to Tuskegee and picked Williford up and they drove to the VA Hospital where he completed the paperwork and when they left the hospital, Williford slipped him another two hundred dollars for his help in keeping the down payment to twelve hundred dollars.
He further stated that when he got to Tuskegee Williford did not mention anything about an additional three hundred dollars or that he had gotten a call that another three hundred dollars was required to be paid; that when the used car manager sent him to Tuskegee he did not tell him to pick up an additional three hundred dollars and bring it back to the company. *Page 548 
On cross-examination appellant testified that he heard Marvin Williford testify that he got a call from David Higgins in which he was told he had to come up with an additional three hundred dollars; that he heard David Higgins testify to the same thing; that he heard Marvin Williford testify that he gave him the additional three hundred dollars and told him to see that it got to the dealership, but that it didn't happen that way. Appellant summed up his testimony by saying Marvin Williford slipped him another two hundred dollars because he had been good to him during the car sale transaction.
On rebuttal the State recalled Marvin Williford, Jr., and he testified that he never gave appellant three hundred dollars for his efforts in getting such a good deal for him in the purchase and sale of the automobile; that he did not slip appellant one hundred dollars while he was test driving the car and that he did not slip him another two hundred dollars after leaving his father's office at the VA Hospital in Tuskegee, Alabama. He further testified that Mr. Higgins called him and told him he had to get up an additional three hundred dollars in order to get the proper financing.
On cross-examination he stated that he was prepared to pay seventeen hundred dollars as a down payment on the car but that Mr. Crowell told him that he thought twelve hundred dollars would be sufficient. He said that Mr. Crowell filled out the credit application for them in Tuskegee but he denied that he gave him two hundred extra dollars for his help in filling out the credit application.
Appellant contends that the evidence was insufficient to prove the crime of embezzlement and if it was sufficient, the embezzlement took place in Macon County and not in Lee County. We do not agree.
Embezzlement comprehends lawful possession of property of another by virtue of some trust, duty, agency, or employment, and the fraudulent conversion of such property to the use of the person so in possession. Abbott v. State, 27 Ala. App. 87,167 So. 599.
The initial transaction originated in Lee County where the purchase and sale was partially completed and a receipt for twelve hundred dollars was given to the purchaser. The fact that the Chrysler Credit Corporation would not approve the twelve hundred dollars as a down payment and that three hundred dollars more was needed together with a co-signer on the note which was paid and signed in Macon County did not change the venue from Lee to Macon County. The three hundred dollar conversion did not take place until appellant returned to Lee County and refused to surrender the money which was the rightful property of the company in Auburn, Alabama. This is corroborated by the fact that Plainsman Chrysler, Plymouth, Dodge, Inc., a corporation, reimbursed Mr. Marvin Williford, Jr., for the three hundred dollars which appellant stole or embezzled.
The question of venue cannot be raised for the first time on appeal. In his motion to exclude the appellant only raised the sufficiency of the evidence to make out a prima facie case. The question of venue was not a ground of the motion to exclude.Turner v. State, 266 Ala. 250, 96 So.2d 303; Ward v. State, Ala.Cr.App., 376 So.2d 1112.
Conflicting evidence is for the jury and a verdict rendered thereon will not be disturbed on appeal. Woods v. State, Ala. Cr.App., 344 So.2d 1225; Young v. State, Ala.Cr.App.,346 So.2d 509.
On appeal from a conviction, the Court of Criminal Appeals is required to consider the evidence in the most favorable light for the prosecution. Ala.Dig. Criminal Law, Key No. 1144.13 (2).
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 549