This petition for writ of certiorari raises the question of whether the Court of Criminal Appeals, 474 So.2d 120, erred in affirming petitioner's conviction for escape in the first degree under Code 1975, § 13A-10-31. We granted the writ because the petition presented a significant issue as to whether petitioner was in lawful custody under the provisions of §§ 13A-10-30, -31, and 15-22-54.
George Stephen Dietz, the petitioner, was arrested by officers of the Hartselle Police Department on June 24, 1981, and charged with driving under the influence and driving without a license. At the time, he was on probation pursuant to a conviction in 1978 for two counts of burglary. After Dietz spent one night in the city jail, a Morgan County sheriff's deputy took custody of him on June 25th, 1981, and transported him to the county jail. On February 4, 1982, Dietz left the county jail, apparently taking advantage of minimal supervision over him due to his status as a trusty.
The State charged Dietz with the felony of first degree escape for this unauthorized departure from the county jail and obtained a conviction and a habitual-offender sentence of life in prison pursuant to Code 1975, § 13A-5-9.[1] The Court of Criminal Appeals affirmed his conviction and sentence.
Code 1975, § 13A-10-31, specifies, in pertinent part, that "A person commits the crime of escape in the first degree if . . . [h]aving been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction." Escape in the first degree is a Class B felony. Section13A-10-30 gives the applicable definition of "custody": "A restraint or detention by a public servant pursuant to a lawful
arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail." (Emphasis added.) Our first inquiry is whether Dietz was in lawful custody.
It is settled law that a probationer has a conditional liberty interest protected by the Fourteenth Amendment to the United States Constitution. Gagnon v. Scarpelli, 411 U.S. 778,93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer,408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This liberty "is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." Id., at 482, 92 S.Ct. at 2601.
Code 1975, § 15-22-54, provides for the arrest of a suspected probation violator, either upon the issuance of a warrant or
 "upon the request of the probation officer. . . . In the case of an arrest without a warrant, the arresting officer shall have a written statement by said probation officer setting forth that the probationer has, in his judgment, violated the conditions of probation, and said statement shall be sufficient warrant for the detention of said probationer in the county jail or other appropriate place of *Page 129 
detention until such probationer shall be brought before the court."
Id., subsection (d) (emphasis added).
Warren McDonald, Dietz's probation officer, testified that he knew he was required to make a written statement in order to authorize an officer to arrest a probation violator and normally did so; and that he did not do so in this case. The statute makes it clear that this statement is in lieu of a warrant. No warrant was issued in this case. Section 15-22-54
does not authorize a probation officer to have a probationer arrested without a warrant or a written statement.
The Court of Criminal Appeals, applying the precursor of §15-22-54, held in Phillips v. State, 52 Ala. App. 297, 301,291 So.2d 751, 754 (1973), that "there are some jurisdictional prerequisites to revocation of probation. Before a probation may be revoked, there must be (1) an arrest of the probationer, either on a warrant of arrest issued by the court, or a written
statement by a probation officer. . . ." (Emphasis in original.) The Court of Appeals in McCain v. Sheppard,33 Ala. App. 431, 432, 34 So.2d 225, 226 (1948), referred to the portion of the statute quoted above as providing "as to who may arrest the probationer and what papers are prerequisite to a lawful arrest." See also Austin v. State, 375 So.2d 1295
(Ala.Crim.App. 1979); and Sparks v. State, 40 Ala. App. 551,119 So.2d 596 (1959), cert. denied, 270 Ala. 488, 119 So.2d 600
(1960).
The State contends that no written statement was necessary because McDonald himself was the arresting officer. In light of the scheme of § 15-22-54 whereby either the court issues a warrant or the probation officer provides a written statement, the State's argument would make the trial judge the arresting officer if a warrant is issued. Common usage dictates that the deputy who physically removed Dietz from the city jail was the "arresting officer." We need not address the possibility raised by the language of § 15-22-54 (d) that, even if the probation officer personally arrests the probationer, he must complete a written statement.
The State also contends that, because Dietz's arrest by the city police was lawful, he was in lawful custody even after he was transferred to the county jail. The record indicates, however, that Dietz would have been released from the city jail on or about June 25th if McDonald had not requested the police to hold him and asked the sheriff to bring him to the county jail. If he had been released from the city jail and McDonald had sent the sheriff to arrest him at his home, § 15-22-54
would have required that the sheriff have the probation officer's written statement. Nothing in the statute allows the city police department's verbal agreement to hold Dietz to substitute for the written statement as the means whereby the probation officer secures lawful custody.
Finally, the State contends that the deputy had probable cause to arrest Dietz as a suspected probation violator on the basis of what McDonald told the sheriff's department. Section15-22-54 (d), however, does not authorize a sheriff or other peace officer to arrest a probationer without written authorization from the probation officer simply because the arresting officer has probable cause to believe the probationer has violated the conditions of probation. The requirement of a written statement prohibits that very sort of arrest. Neither did the deputy have probable cause to arrest Dietz for violation of the traffic misdemeanors with which he was charged, because Dietz was in the proper custody of the city police for those offenses. The State's argument for lawful custody based on a "probable cause" arrest must therefore fail.
Having established that Dietz was not in fact in lawful custody in the county jail, we must now address the Court of Criminal Appeals' holding that Dietz was in custody under color of law and thus could not challenge his custody by escaping. We stress at the outset of this discussion that we agree with the general authority that a *Page 130 
prisoner is not normally entitled to self-help in challenging his custody. As the decision cited by the Court of Criminal Appeals itself acknowledged, however, there is an exception to the rule where the prisoner is in custody under no authority at all. See the portion of that court's opinion quoting from Statev. Perry, 364 So.2d 900 (La. 1978).
In addition to the unlawfulness of the arrest, the lack of authority for Dietz's incarceration is evident from the testimony of the clerk of the Circuit Court of Morgan County that he had no record of Dietz's presence in the jail after he was released on probation. The "arrest and booking slip" to which the Court of Criminal Appeals referred as "charging" Dietz with probation violation was only the jailer's notation, not an official court record. The report which McDonald gave to the circuit judge's secretary two weeks after Dietz's arrest was not filed with the circuit clerk.
The Court of Criminal Appeals' statement that the purpose of the probation officer's written authorization is "to ensure that there is sufficient certainty of a violation to make the arrest appropriate" is true enough. The written statement is also the process to which a probationer is due under our system of constitutional law. It serves as a substitute for a warrant which would otherwise be issued by the court.
It is not clear from the record whether a copy of the authorization statement is normally filed with the circuit clerk, although McDonald made the general statement, "I never filed one," regarding his failure to complete a written statement to regain custody of Dietz. Whether this written statement would produce a court record of a probationer's custody or is merely a minimal indication of official action, we cannot say under the circumstances that Dietz's imprisonment without such a written statement was "under color of law."
The United States Supreme Court held in Gagnon, supra, that an accused probation violator is entitled to the same due process guarantees as those recognized for parolees inMorrissey, supra. The Morrissey rights include a preliminary hearing "as soon as convenient after arrest" for an officer not directly involved in the case to determine whether there is probable cause to believe the accused has violated the conditions of his liberty. Id., 408 U.S. at 485,92 S.Ct. at 2602. Section 15-22-54 (d) provides that the probation officer "shall forthwith report such arrest and detention to the court," whereupon the court is to hold a hearing. A written record of Dietz's arrest might have prevented him from languishing in jail for seven months without any such hearing.
The burden is on the State to prove all the elements of the crime of escape. Lawful custody is one such element. Eady v.State, 369 So.2d 841 (Ala.Crim.App.), cert. denied,369 So.2d 843 (Ala. 1979); Phelps v. State, 416 So.2d 766 (Ala.Crim.App. 1982); Pinkard v. State, 405 So.2d 411 (Ala.Crim.App. 1981). The State did not prove lawful custody in this case, so the trial court should have granted Dietz's motion for judgment of acquittal. The Court of Criminal Appeals erred in affirming the judgment of conviction; its decision is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] In addition to the two burglary convictions for which Dietz was on probation, he had two convictions in 1974 for the sale of controlled substances. *Page 131